# United States District Court
# Central District of California

| | |
|---|---|
| CARROLL SHELBY LICENSING, INC.; and CARROLL HALL SHELBY TRUST, <br><br>Plaintiffs, <br><br>v. <br><br>U.S. RESTORATION, LLC; and DAVID WAYNE MILLER II, <br><br>Defendants. | Case № 2:17-CV-00737-ODW (SSx) <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS [26]** |

## I.   INTRODUCTION

Pending before the Court is Defendant David Wayne Miller II's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. (Mot., ECF No. 26.) For the following reasons, the Court **DENIES** Miller's Motion.

## II.   FACTUAL BACKGROUND

This action stems from Plaintiffs Carroll Shelby Licensing, Inc. ("CSL") and Carroll Hall Shelby Trust's (the "Trust") allegations that Defendants Miller and U.S. Restoration, LLC infringed on Plaintiffs' "SHELBY" trademarks ("SHELBY Marks"). Carroll Shelby was a race car driver who also designed race and production cars. (Compl. ¶ 8, ECF No. 1.) Plaintiffs allege that the Trust is the owner of numerous registrations consisting of, or featuring, the name "SHELBY" and that CSL is the licensing agent for the Trust. (Compl. ¶¶ 9–10.) The Trust is organized and

exists under the laws of the state of Texas. (Compl. ¶ 2.) CSL is a Texas corporation with its principle place of business in Los Angeles County, California. (Compl. ¶ 1.)

U.S. Restoration is an Oklahoma limited liability company which has its sole location in Tulsa, Oklahoma. (Miller Decl. ¶ 1, ECF No. 26-1.) Miller is the founder and President of U.S. Restoration and an Oklahoma resident. (Miller Decl. ¶¶ 1, 3.)

### A. Plaintiffs' Factual Allegations

The Plaintiffs allege the following against Miller and U.S. Restoration:

In mid-June 2014, Plaintiffs discovered that U.S. Restoration was selling replicas of the SHELBY GT 350 Mustang and SHELBY GT 500 Mustang, among other models, and using the SHELBY Marks and trade dress on, and in advertising for, the vehicles. (Compl. ¶ 13.) On June 21, 2014, counsel for CSL and the Trust sent a cease-and-desist letter to U.S. Restoration and demanded that U.S. Restoration immediately stop producing infringing products. (*Id.* ¶ 14.) In response to the cease-and-desist letter, Miller requested a license from CSL to produce officially licensed SHELBY vehicles. (*Id.* ¶ 15.)

Miller and CSL negotiated the terms of a license. (*Id.* ¶ 16.) During the negotiations, Miller traveled to California on behalf of U.S. Restoration to meet with CSL. (Opp'n 7, ECF No. 7; Miller Decl. ¶ 9.) On September 1, 2014, CSL and U.S. Restoration executed a License Agreement, which Miller signed on behalf of U.S. Restoration. (Compl. ¶ 16; Compl. Ex. A, ECF No. 1-1; *see also* Mot. 3.) The License Agreement includes a forum-selection clause, providing for venue and jurisdiction in any state or federal court located in Los Angeles County, California. (Compl. Ex. A ¶ 22.2.)

Plaintiffs allege that U.S. Restoration breached the License Agreement, prompting CSL to send U.S. Restoration a notice terminating the agreement on December 4, 2014. (Compl. ¶¶ 20–22.) On May 30, 2015, Miller sent a letter to CSL seeking to resume the licensing relationship with CSL, but CSL declined. (*Id.* ¶ 23.) Plaintiffs further allege that Miller and U.S. Restoration continued to utilize the

SHELBY Marks and trade dress after the termination of the License Agreement and that they advertised restoration services with the SHELBY Marks on U.S. Restoration's website. (*Id.* ¶ 24.)

On October 5, 2015, counsel for CSL and the Trust sent a letter notifying Miller and U.S. Restoration they were infringing the SHELBY Marks and demanded that they stop. (*Id.* ¶ 25.) On October 14, 2015, Miller responded to the letter denying that he or U.S. Restoration was making any use of the SHELBY Marks on the website and denied any sales of counterfeit SHELBY vehicles. (*Id.* ¶ 26.)

Plaintiffs allege that Miller and U.S. Restoration continued to use the SHELBY Marks without permission. (*Id.* ¶ 27.) They also claim Miller issued promotional materials to third parties promoting his abilities as a re-creator of SHELBY vehicles and seeking co-sponsors for a television show featuring his production of 500 SHELBY continuation cars. (*Id.*)

Plaintiffs filed their Complaint on January 30, 2017. (*See generally* Compl.) Plaintiffs assert claims against Miller and U.S. Restoration for: (1) trademark infringement (15 U.S.C. § 1114); (2) false designation of origin and false advertising (§ 1125(a)); (3) trademark dilution (§1125(c) and California Business and Professions Code § 14247, et seq.); (4) common law trademark infringement and unfair competition; and (5) violations of California Business and Professions Code § 17200, et seq. (*Id.*) Plaintiffs additionally assert a breach of contract claim against U.S. Restoration. (Compl. ¶¶ 83–86.)

**B.  Defendant Miller Moves to Dismiss Plaintiffs' Complaint**

On August 4, 2017, Miller moved to dismiss Plaintiffs' Complaint against him for lack of personal jurisdiction and improper venue. (Mot., ECF No. 26.) Plaintiffs submitted their Opposition to Miller's Motion on August 21, 2017.[1] (Opp'n, ECF No. 28.) Miller's Motion to Dismiss is fully briefed and ripe for decision by this Court.[2]

---

[1] Plaintiffs attached the Declaration of M. Neil Cummings in support of their Opposition to Miller's Motion to Dismiss. (Cummings Decl., ECF No. 28-1.) In his Reply, Miller submitted a number of evidentiary objections to Cummings' Declaration. (ECF No. 31.) As explained below, the Court

### III. LEGAL STANDARD

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2), a party may seek dismissal of an action for lack of personal jurisdiction. Once a party seeks dismissal under Rule 12(b)(2), the plaintiff has the burden of demonstrating that the exercise of personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where the motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Accordingly, the Court only "inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Although the plaintiff cannot "simply rest on the bare allegation of its complaint," uncontroverted allegations in the complaint must be taken as true. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977); *see AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Factual disputes are resolved in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1554 (9th Cir. 2006).

A federal district court may exercise personal jurisdiction over a non-resident defendant if the defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110–11 (9th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 326 (1945)). A district court may exercise either general or specific personal jurisdiction over

---

finds that Plaintiffs have satisfied their burden of making a prima facie showing of personal jurisdiction over Miller based on the allegations in the Complaint and the undisputed facts as shown in Miller's own declaration. Therefore, the Court finds it unnecessary to rule on Miller's evidentiary objections to Cummings' Declaration.

[2] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

nonresident defendants. *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

A person is subject to general jurisdiction when his or her "contacts with a state are substantial or continuous and systematic" so as to "approximate physical presence" in the state. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Such a person is subject to the jurisdiction of the courts of that state, "even if the action is unrelated to those contacts." *Id.*

A person who is not subject to general jurisdiction may still be subject to jurisdiction in actions that arise out of that person's specific forum-related activities. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993). The Ninth Circuit has established a three-part test for determining specific jurisdiction:

(1) "The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)*; see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test. *Schwarzenegger*, 374 F.3d at 802. If that party can satisfy the first two prongs of the test, the burden then shifts to the party contesting jurisdiction to "present a compelling case" that the third prong, reasonableness, has not been satisfied. *Id.*

**B.     Motion to Dismiss for Improper Venue**

A defendant may move to dismiss a complaint for improper venue under Rule 12(b)(3). In determining whether venue is proper, the court looks to 28 U.S.C. § 1391(b), which provides that venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. Pursuant to § 1406(a), a district court in which venue is improper shall dismiss such case or, "if it be in the interest of justice, transfer such case to any district in which it could have been brought."

## IV.     DISCUSSION

**A.     Purposeful Direction**

Plaintiffs do not dispute that Miller would not be subject to general jurisdiction in California; therefore, only specific jurisdiction is at issue here. To determine specific jurisdiction in a suit sounding in tort,[3] a court looks to whether a defendant "purposefully directs" his activities toward the forum. *Schwarzenegger*, 374 F.3d at 802. Miller contends that this Court lacks specific jurisdiction over him because he did not "purposefully direct" his activities toward California. (Mot. 9–10.) The Court disagrees.

The Ninth Circuit has held that the relevant inquiry for purposeful direction is whether the defendant allegedly has (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

---

[3] Cases involving trademark infringement are "akin to a tort case." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998).

suffered in the forum state. *Schwarzenegger*, 374 F.3d at 803. Plaintiffs' allegations meet this test.

Plaintiffs allege that Miller committed the intentional torts of trademark infringement and unfair competition by intentionally using the SHELBY Marks without permission. These allegations satisfy the "intentional act" prong. *See Levi Strauss & Co. v. Toyo Enter. Co., Ltd.*, 665 F. Supp. 2d 1084, 1093 (N.D. Cal. 2009) (finding "intentional act" requirement satisfied by allegations of trademark infringement).

Additionally, Plaintiffs allege that (1) Miller traveled to California to negotiate the License Agreement on behalf of U.S. Restoration, (2) he signed the License Agreement on behalf of U.S. Restoration, and (3) he corresponded numerous times with CSL—all the while knowing they were located in California—regarding the viability of the licensing relationship between CSL and U.S. Restoration. (Compl. ¶¶15–19; Compl. Ex. A; *see also* Miller Decl. ¶ 9.) Miller does not dispute these jurisdictional allegations.

Specific jurisdiction exists "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food*, 303 F.3d at 1111 (internal quotation marks removed). It is undisputed that Miller knew CSL was located in California. Therefore, the Court concludes the Miller's conduct was "expressly aimed" at California and that he likely knew that any alleged harm by CSL arising from that conduct would be felt in California. The requirements for "purposeful direction" have been met.

**B.  Arising Out of**

Under the second prong of specific-jurisdiction analysis, the plaintiff's claim must be one which arises out of or relates to the defendant's forum-related activities. The Ninth Circuit follows the "but for" test to determine whether claims arise out of a defendant's forum-related conduct, considering whether plaintiff would not have suffered an injury "but for" defendant's forum-related conduct. *Menken*, 503 F.3d at

1058; *Meyers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). As explained above, Miller purposefully directed his activities toward California and Plaintiffs' alleged harm would not have occurred but for those activities.

**C. Reasonableness**

Since Plaintiffs have established the first two prongs of the specific-jurisdiction test, the burden shifts to Miller to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 476–77. A defendant's burden to meet the reasonableness prong is high and in general, such a finding is limited to rare situations "where the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994). The Court finds the present case is not one of those rare situations.

In determining whether the exercise of jurisdiction over a nonresident defendants is reasonable, courts consider seven factors: (1) the extent of defendant's purposeful interjection into the forum state's affairs; (2) the burden on defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's home state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiffs' interests in convenient and effective relief; and (7) the existence of an alternative forum. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). None of the factors is dispositive itself; instead, the Court must balance all seven. *Id.* at 1488.

*1. Purposeful Interjection*

Miller directed his activities to California to a degree sufficient to satisfy the purposeful direction requirement. *See supra* Part IV.A. Therefore, the first factor weighs in favor of reasonableness.

### 2. *Burden on Miller and Conflict with Sovereignty of Oklahoma*

Miller does not contest reasonableness under the next two factors—the burden on defendant of defending in the forum and the extent of conflict with the sovereignty of defendant's home state—so the Court need not address those. (*See* Mot. 15.)

### 3. *California's Interest*

Plaintiffs have alleged that Miller infringed the trademarks of CSL, which has its principal place of business in California. As a result, California has a significant interest in protecting CSL from trademark infringement. *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675–76 (9th Cir. 2012) ("[S]tates have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents." (citation omitted)).

### 4. *Efficient Resolution*

Miller argues that because he is a resident of Oklahoma and U.S. Restoration is an Oklahoma company, it would be most efficient to conduct the proceedings in Oklahoma because that is where Defendants' documents and witnesses are located. (Mot. 16.) The Court disagrees. While it may be true that a lot of relevant evidence is located in Oklahoma, the fact remains that U.S. Restoration signed a contract with a forum-selection clause, agreeing to resolve this dispute in California. Therefore, the efficiencies lie in adjudicating this dispute in California.

### 5. *Importance of Forum*

Miller argues that this factor weighs against exercising jurisdiction because effective relief is available in the U.S. District Court for the Northern District of Oklahoma. (Mot. at 16.) Plaintiffs provide no argument as to why it is important to them to litigate this case in California, other than to cite to the forum-selection clause in the License Agreement. Further, "[i]n evaluating the convenience and effectiveness of an alternative forum, [the Ninth Circuit has] given little weight to the plaintiff's inconvenience." *Panavision*, 141 F.3d at 1324. Accordingly, this factor weighs against the exercise of jurisdiction.

### 6. *Alternative Forum*

Plaintiffs do not dispute that an alternative forum exists in Oklahoma. Therefore, this factor also weighs against the exercise of jurisdiction

### 7. *Weighing of Factors*

It is Miller's burden to prove that the exercise of personal jurisdiction over him would be unreasonable. Here, only two of the seven factors clearly weigh against the exercise of jurisdiction. Therefore, Miller has failed to meet his burden.

## D. Fiduciary Shield Doctrine

Miller argues that he is not subject to personal jurisdiction in California, because all of his contacts with CSL and the Trust were done as an employee of U.S. Restoration. (Mot. 13.) The fiduciary shield doctrine protects individuals from being subject to jurisdiction solely on the basis of their employers' minimum contacts within a given jurisdiction. *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254 PJH, 2009 WL 29905, at *5 (N.D. Cal. Jan. 5, 2009). In other words, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999); *j2 Global*, 2009 WL 29905, at *5. Though employees are not necessarily subject to liability in a given jurisdiction due to the contacts of their employers, "their status as employees does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790 (1984). "Each defendant's contacts with the forum State must be assessed individually." *Id*.

The Court finds that the fiduciary shield doctrine does not apply in this case, because Plaintiffs have alleged causes of action against both U.S. Restoration and Miller, and as explained above, Miller's activities were purposefully directed at the state of California. This is not the case where Plaintiffs ask this Court to exercise jurisdiction over Miller "solely on the basis of [U.S. Restoration's] minimum contacts" with California. *See j2 Global*, 2009 WL 29905, at *5.

In addition, Plaintiffs assert that an exception to the fiduciary shield doctrine applies; namely, Miller controlled, or directly participated in, the alleged activities. (Opp'n 18.) "A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Wolfe Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999)). The Court finds that this exception applies, because Plaintiffs have alleged causes of action against Miller in his personal capacity and Miller purposefully directed his activities toward California.

In *Davis v. Metro Productions, Inc.*, the Ninth Circuit held that two individual non-resident defendants, each 50% shareholders of Defendant Metro Productions, were subject to personal jurisdiction in Arizona, because they purposefully directed their activities to that state. 885 F.2d 515, 522 (9th Cir. 1989). In so holding, the court found that the two individuals solicited business from Arizona, and met with a citizen of that state to discuss the opportunity for his clients to invest in a fraudulent venture. *Id.* at 522–23. Similarly, Miller traveled to California to meet with CSL to discuss the possibility of the License Agreement, signed that agreement on behalf of U.S. Restoration, and continued to be the point of contact for U.S. Restoration throughout its dealings with CSL and the Trust.

For the foregoing reasons, the fiduciary shield doctrine does not apply, and it is appropriate to exercise specific, personal jurisdiction over Miller.

**E.  Venue**

Miller also moves for dismissal of the Complaint on the ground that venue is improper in the Central District of California. Section 1391(b)(2) provides that venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred." The Court finds that this test has been met. As explained above, it is undisputed that: (1) Miller traveled to California to meet with CSL to negotiate the

License Agreement; and (2) U.S. Restoration entered into the Licensing Agreement with CSL, and Miller signed that agreement on behalf of U.S. Restoration. Those facts, taken together with Plaintiffs' allegations that Defendants intentionally infringed the SHELBY Marks, are sufficient to show that "a substantial part of the events . . . giving rise to [Plaintiffs'] claim occurred" in California. 28 U.S.C. § 1391(b)(2); *see also Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1129 ("[P]laintiffs may rely on allegations in their complaint to establish venue to the extent those allegations are not controverted by defendant's evidence").

### V. CONCLUSION

For the foregoing reasons, Miller's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

September 15, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**